**CR04      667**

KMB:CP:KN:sd
F.# 2004R00800

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   JUL 26 2004   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOHN MARCIANO,
ROBERT OOSTERWYK and
JACOB AGAM,

       Defendants.

- - - - - - - - - - - - - - - -X

I N D I C T M E N T

WEXLER, J.
ORENSTEIN, M

Cr. No. _____
(T. 15, U.S.C., §§ 78j(b)
and 78ff; T. 18, U.S.C., §§
371, 982, 1956(a)(1)(B)(i),
1956(h), 2 and 3551 et
seq.; T. 21, U.S.C., §
853(p))

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise stated:

The Brokerage Firms

1.   Royce Investment Group, Inc. ("Royce") was a broker-dealer of securities registered with the Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers, Inc. ("NASD").  Royce's office was located in Westbury, New York.

2.   Royce underwrote initial public offerings ("IPOs") of securities, was a "market maker" in various securities and offered a variety of brokerage services to retail customers.  A "market maker" facilitates trading in a security by setting price quotations and holding itself out as prepared to buy and sell

certain quantities of the security for its own account. Royce employed licensed stock brokers, also referred to as "registered representatives," who purchased and sold securities for Royce's own accounts, assisted Royce in making markets in securities and sold securities to clients of Royce.

3. Kensington Wells, Inc. ("Kensington Wells") was a broker-dealer of securities registered with the SEC and NASD. Kensington Wells' principal office was located in Syosset, New York. Kensington Wells employed licensed stock brokers, also referred to as "registered representatives," who purchased and sold securities for Kensington Wells' own accounts, assisted Kensington Wells in making markets in securities and sold securities to clients of Kensington Wells.

The Xybernaut IPO

4. Xybernaut, Inc. ("Xybernaut"), which originally was named Computer Products and Services, was a Delaware corporation organized in or about 1990 which purported to be involved in the research, development and sale of wearable computer technology.

5. In or about and between November 1995 and April 1996, Xybernaut issued convertible notes, which are general debt obligations of a company that can be exchanged for a set number of shares of common stock or other securities. Xybernaut's notes were convertible into Xybernaut units, each of which was comprised of one share of common stock and one warrant.

2

6.   Xybernaut first issued units, common stock and warrants to the public through an IPO which occurred on or about July 18, 1996 (the "Xybernaut IPO" or the "IPO"), at which time Xybernaut securities began trading publicly on the NASDAQ National Market System ("NASDAQ").   Royce and Kensington Wells were the underwriters of the Xybernaut IPO.

7.   At the time of the Xybernaut IPO, the convertible notes were converted into Xybernaut units which could be traded publicly on NASDAQ.

8.   In or about and between July 1996 and January 1997, stock brokers employed at Royce and Kensington Wells solicited retail clients to purchase Xybernaut securities.

<u>The Defendants</u>

9.   In or about and between April 1987 and October 1999, the defendant JOHN MARCIANO was registered with the NASD as one of the principals of Royce.   MARCIANO was the Chairman and Chief Executive Officer of Royce.   MARCIANO managed and supervised the operations of Royce and made the major decisions regarding its finances.

10.   In or about and between 1983 and 2000, the defendant ROBERT OOSTERWYK was a managing director of corporations (referred to herein as "Front Corporations") based in the Cayman Islands and elsewhere, including Gateway Investments, Ltd. ("Gateway"), Sunrise Holdings, Ltd. ("Sunrise"), Glen Eden, S.A. ("Glen Eden"),

3

Bunnick Holdings, Ltd. ("Bunnick"), Ashdown Holdings, Ltd. ("Ashdown"), Medway Investments, Ltd. ("Medway"), Noord Holdings, Ltd. ("Noord") and Northwest Holdings, Ltd. ("Northwest").

11. In or about and between 2001 and April 2004, the defendant JACOB AGAM was a managing director of Front Corporations in Europe, including Vertical Financial Holdings ("Vertical") and Horeb Holdings ("Horeb").

The Fraudulent Scheme and Money Laundering

12. In or about and between 1995 and 1996, the defendants JOHN MARCIANO and ROBERT OOSTERWYK, together with the principals of Kensington Wells and others, devised, implemented, oversaw and participated in a fraudulent scheme and artifice to manipulate the market price of Xybernaut securities.

13. It was a part of the scheme and artifice that the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others opened bank and brokerage accounts in the names of the Front Corporations (referred to herein as "Nominee Accounts"), to hide their ownership of and trading through the Nominee Accounts of certain securities, including Xybernaut securities.

14. It was a further part of the scheme and artifice that, in or about November 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others secretly obtained a large block of convertible notes from Xybernaut, which they purchased in the names of Front Corporations and deposited into Nominee Accounts.

4

15.  It was a further part of the scheme and artifice that, on the day of the Xybernaut IPO, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others agreed to convert their notes to large blocks of Xybernaut units.

16.  It was a further part of the scheme and artifice that, on the day of the Xybernaut IPO, after the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others secretly gained control of large blocks of Xybernaut securities, the Kensington Wells and Royce principals and brokers engaged in a number of manipulative and deceptive acts and practices designed to inflate artificially the demand for and price of Xybernaut securities.

17.  It was a further part of the scheme and artifice that the defendant JOHN MARCIANO and others agreed with the principals of Kensington Wells to create artificial market demand for the purpose of inflating the price of the Xybernaut securities on the day of the IPO.  Among other deceptive and manipulative means, the principals and brokers of Kensington Wells and Royce, along with others, (a) made and caused to be made materially false and fraudulent representations to Kensington Wells and Royce customers, and omitted to state material facts necessary in order to make the statements made not misleading, in order to induce those customers to purchase Xybernaut securities; (b) used and caused to be used high pressure and deceptive sales tactics in order to induce Kensington Wells and Royce customers to purchase

5

Xybernaut securities; and (c) paid and accepted excessive, undisclosed commissions in exchange for brokers at Kensington Wells and Royce inducing their retail customers to purchase Xybernaut securities.

18.   It was a further part of the scheme and artifice that the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others did not disclose to investors, and caused the Kensington Wells and Royce principals and brokers not to disclose to investors, that these defendants and others would profit personally during the trading immediately following the IPO by selling Xybernaut securities that they held in Nominee Accounts.

19.   It was a further part of the scheme and artifice that, in exchange for Kensington Wells selling the Xybernaut securities at artificially inflated prices, the defendant JOHN MARCIANO and others agreed to share with the principals of Kensington Wells the profits from these sales.

20.   It was a further part of the scheme and artifice that, after the price of Xybernaut securities rose artificially as a result of these deceptive and manipulative techniques, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others sold their Xybernaut securities at a substantial profit from Nominee Accounts that they controlled.

21.   It was a further part of the scheme and artifice that the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others

engaged in transactions in Nominee Accounts in order to transfer their profits from the sale of Xybernaut securities to Nominee Accounts and accounts controlled by the principals of Kensington Wells.

22.   It was a further part of the scheme and artifice that the defendant ROBERT OOSTERWYK was paid a share of the proceeds from the sale of Xybernaut securities as compensation for his participation in the fraudulent scheme.

23.   It was a further part of the scheme and artifice that, in or about and between 2001 and April 2004, the defendant JACOB AGAM opened and controlled Nominee Accounts at banks in Switzerland in the names of Front Corporations, so that the defendant JOHN MARCIANO and others could distribute their profits from the securities fraud scheme while hiding their involvement in it.

24.   It was a further part of the scheme and artifice that the defendant JOHN MARCIANO and others established a Front Corporation in New York called BRQ, Ltd., Inc. ("BRQ"). MARCIANO, the defendant JACOB AGAM, and others used BRQ to receive wire transfers from the Nominee Accounts that AGAM controlled in Switzerland.  MARCIANO, AGAM and others attempted to hide the true nature of the wire transfers by executing a sham consulting agreement between BRQ and AGAM's Front Corporations.

25.   It was a further part of the scheme and artifice that the defendant JACOB AGAM received a portion of the proceeds

7

from the sale of the Xybernaut securities from the defendant JOHN
MARCIANO and others, which AGAM used to purchase gold and other
things of value. AGAM then sold the gold and other things of value
and deposited the proceeds from these sales into Nominee Accounts
that AGAM controlled in Switzerland so that the proceeds from the
sale of Xybernaut securities would not be traceable to MARCIANO
and others. AGAM, acting at the direction of MARCIANO and others,
then disbursed the proceeds from Nominee Accounts in Switzerland to
accounts in the United States under the control of MARCIANO and
others, or used the proceeds to make other investments or purchases
for the benefit of MARCIANO and others.

### COUNT ONE
(Securities Fraud Conspiracy)

26.   The allegations contained in paragraphs 1 through 25
are repeated and incorporated as though fully set forth in this
paragraph.

27.   In or about and between November 1995 and November
1996, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOHN
MARCIANO and ROBERT OOSTERWYK, together with others, did knowingly
and willfully conspire to use and employ manipulative and deceptive
devices and contrivances, directly and indirectly, in violation of
Rule 10b-5 of the Rules and Regulations of the Securities and
Exchange Commission (Title 17, Code of Federal Regulations, Section
240.10b-5), and, directly and indirectly, to (a) employ devices,

8

schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the investing public, in connection with purchases and sales of Xybernaut securities, and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

28. In furtherance of the conspiracy, and to effect its objects, within the Eastern District of New York and elsewhere, the defendants JOHN MARCIANO, JACOB AGAM and ROBERT OOSTERWYK, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about November 15, 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused $1,255,500 to be transferred from the Nominee Account at Cayman National Bank ("CNB") in the name of Bunnick (the "Bunnick CNB Account") to Nominee Accounts at CNB in the names of Ashdown (the "Ashdown CNB Account"), Medway (the "Medway CNB Account"), Noord (the "Noord CNB Account") and Northwest (the "Northwest CNB Account").

b. On or about November 16, 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Ashdown to purchase

$330,000 of Xybernaut convertible notes, which they converted at the time of the IPO into 188,571 units of Xybernaut.

c.    On or about November 16, 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Medway to purchase $325,000 of Xybernaut convertible notes, which they converted at the time of the IPO into 185,714 units of Xybernaut.

d.    On or about November 16, 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Noord to purchase $300,000 of Xybernaut convertible notes, which they converted at the time of the IPO into 171,429 units of Xybernaut.

e.    On or about November 16, 1995, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Northwest to purchase $300,000 of Xybernaut convertible notes which they converted at the time of the IPO into 171,429 units of Xybernaut.

f.    On or about April 16, 1996, the defendant JOHN MARCIANO and others caused Elono Portfolio, S.A. ("Elono") to purchase $500,000 of Xybernaut convertible notes, which they converted at the time of the IPO into 285,714 units of Xybernaut.

g.    On or about April 16, 1996, the defendant JOHN MARCIANO and others caused Planate Business, S.A. ("Planate") to purchase $450,000 of Xybernaut convertible notes, which they converted at the time of the IPO into 257,143 units of Xybernaut.

h.    In or about and between April 1996 and July 1996, the defendant JOHN MARCIANO met with others to discuss the sale of

10

Xybernaut securities during the period of trading immediately following the IPO, and the distribution of the resulting proceeds.

i.   On or about July 18, 1996, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Ashdown to sell approximately 188,571 units of Xybernaut at prices ranging from approximately $12.37 to $14.37 per unit, which resulted in proceeds of approximately $2,533,000.

j.   On or about July 18, 1996, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Medway to sell approximately 185,714 units of Xybernaut at a price of approximately $12.37 per unit, which resulted in proceeds of approximately $2,298,000.

k.   On or about July 18, 1996, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Noord to sell approximately 171,429 units of Xybernaut at prices ranging from approximately $12.37 to $13.37 per unit, which resulted in proceeds of approximately $2,221,000.

l.   On or about July 18, 1996, the defendants JOHN MARCIANO and ROBERT OOSTERWYK and others caused Northwest to sell approximately 171,429 units of Xybernaut at a price of approximately $12.37 per unit, which resulted in proceeds of approximately $2,121,000.

m.    On or about July 18, 1996, the defendant JOHN MARCIANO and others caused Elono to sell approximately 285,714 units of Xybernaut at prices ranging from approximately $12.37 to $17.37 per unit, which resulted in proceeds of approximately $4,335,000.

n.    On or about July 18, 1996, the defendant JOHN MARCIANO and others caused Planate to sell approximately 257,143 units of Xybernaut at prices ranging from approximately $12.37 to $12.87 per unit, which resulted in proceeds of approximately $3,308,000.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (Securities Fraud)

29.    The allegations contained in paragraphs 1 through 25, 27 and 28 are repeated and incorporated as though fully set forth in this paragraph.

30.    In or about and between November 1995 and November 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN MARCIANO and ROBERT OOSTERWYK, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendants, together with others, did knowingly and willfully, directly and indirectly, (a) employ devices, schemes, and artifices to defraud; (b) make

12

untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and

sales of Xybernaut securities, and by use of the means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

<u>COUNT THREE</u>
(Conspiracy to Commit Money Laundering)

31. The allegations contained in paragraphs 1 through 25, 27, 28 and 30 are repeated and incorporated as though fully set forth in this paragraph.

32. In or about and between November 1995 and February 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN MARCIANO, ROBERT OOSTERWYK and JACOB AGAM, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit: securities fraud, knowing that the property involved in such financial transactions represented proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of

13

the specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of such proceeds in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNTS FOUR THROUGH SIXTY-FOUR
### (Money Laundering)

33.    The allegations contained in paragraphs 1 through 25, 27, 28, 30 and 32 are repeated and incorporated as though fully set forth in this paragraph.

34.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants JOHN MARCIANO, ROBERT OOSTERWYK and JACOB AGAM, together with others, knowing that the property involved in financial transactions represented proceeds of some form of unlawful activity, did knowingly and intentionally conduct financial transactions affecting interstate and foreign commerce, as set forth below, which in fact involved the proceeds of specified unlawful activity, to wit: securities fraud, (a) with the intent to promote the carrying on of the specified unlawful activity, and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of

14

such proceeds, in that the defendants listed below, on the dates listed below, transferred by check, wire and other means funds in the approximate amounts listed below, from and to the accounts listed below:

a.    Transfers From Ashdown's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 4 | MARCIANO/ OOSTERWYK | July 29, 1996 | $1,500,000 | Ashdown CNB Account |
| 5 | MARCIANO/ OOSTERWYK | August 8, 1996 | $300,000 | Ashdown CNB Account |
| 6 | MARCIANO/ OOSTERWYK | September 4, 1996 | $200,000 | Ashdown CNB Account |
| 7 | MARCIANO/ OOSTERWYK | September 5, 1996 | $500,000 | Ashdown CNB Account |

b.    Transfers From Medway's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 8 | MARCIANO/ OOSTERWYK | July 29, 1996 | $1,500,000 | Medway CNB Account |
| 9 | MARCIANO/ OOSTERWYK | August 8, 1996 | $375,000 | Account under the control of Care Group, Inc. |
| 10 | MARCIANO/ OOSTERWYK | August 8, 1996 | $300,000 | Medway CNB Account |
| 11 | MARCIANO/ OOSTERWYK | September 5, 1996 | $250,000 | Medway CNB Account |

c.    Transfers From Noord's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 12 | MARCIANO/ OOSTERWYK | July 29, 1996 | $1,500,000 | Noord CNB Account |

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 13 | MARCIANO/ OOSTERWYK | August 8, 1996 | $700,000 | Noord CNB Account |
| 14 | MARCIANO/ OOSTERWYK | August 8, 1996 | $400,000 | Account under the control of Marquee Group |

d.    Transfers From Northwest's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 15 | MARCIANO/ OOSTERWYK | July 29, 1996 | $2,000,000 | Northwest CNB Account |
| 16 | MARCIANO/ OOSTERWYK | August 14, 1996 | $350,000 | Northwest CNB Account |

e.    Transfers From the Ashdown CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 17 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,000 | Account under the control of Computer Products and Services |
| 18 | MARCIANO/ OOSTERWYK | July 31, 1996 | $1,500,000 | Bunnick CNB Account |
| 19 | MARCIANO/ OOSTERWYK | August 9, 1996 | $300,000 | Bunnick CNB Account |
| 20 | MARCIANO/ OOSTERWYK | September 5, 1996 | $200,000 | Bunnick CNB Account |
| 21 | MARCIANO/ OOSTERWYK | September 6, 1996 | $475,000 | Bunnick CNB Account |
| 22 | MARCIANO/ OOSTERWYK | October 29, 1996 | $24,500 | Bunnick CNB Account |

f.   Transfers From the Medway CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 23 | OOSTERWYK/ MARCIANO | November 15, 1995 | $325,000 | Account under the control of Computer Products and Services |
| 24 | MARCIANO/ OOSTERWYK | July 31, 1996 | $1,500,000 | Bunnick CNB Account |
| 25 | MARCIANO/ OOSTERWYK | August 14, 1996 | $300,000 | Bunnick CNB Account |
| 26 | MARCIANO/ OOSTERWYK | September 6, 1996 | $250,000 | Bunnick CNB Account |

g.   Transfers From the Noord CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 27 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,000 | Account under the control of Computer Products and Services |
| 28 | MARCIANO/ OOSTERWYK | July 31, 1996 | $1,500,000 | Bunnick CNB Account |
| 29 | MARCIANO/ OOSTERWYK | August 15, 1996 | $200,000 | Bunnick CNB Account |
| 30 | MARCIANO/ OOSTERWYK | August 20, 1996 | $500,000 | Nominee Account at the Royal Bank of Canada ("RBC") in the name of Magdalane Investments, Ltd. ("Magdalane RBC Account") |
| 31 | MARCIANO/ OOSTERWYK | September 6, 1996 | $250,000 | Bunnick CNB Account |

h.    Transfers From the Northwest CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 32 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,000 | Account under the control of Computer Products and Services |
| 33 | MARCIANO/ OOSTERWYK | July 30, 1996 | $2,000,000 | Magdalane RBC Account |
| 34 | MARCIANO/ OOSTERWYK | August 1, 1996 | $20,184 | Bunnick CNB Account |
| 35 | MARCIANO/ OOSTERWYK | August 15, 1996 | $350,000 | Bunnick CNB Account |

i.    Transfers From the Bunnick CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 36 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,125 | Northwest CNB Account |
| 37 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,125 | Noord CNB Account |
| 38 | OOSTERWYK/ MARCIANO | November 15, 1995 | $325,125 | Medway CNB Account |
| 39 | OOSTERWYK/ MARCIANO | November 15, 1995 | $300,125 | Ashdown CNB Account |
| 40 | MARCIANO/ OOSTERWYK | July 31, 1996 | $4,000,000 | Magdalane RBC Account |
| 41 | OOSTERWYK | August 5, 1996 | $250,000 | Unidentified Account at the Bank of Wales |
| 42 | OOSTERWYK | August 15, 1996 | $140,000 | Nominee Account at CNB in the name of Gateway (the "Gateway CNB Account") |
| 43 | MARCIANO/ OOSTERWYK | August 15, 1996 | $1,300,000 | Magdalane RBC Account |

18

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 44 | OOSTERWYK | September 5, 1996 | $200,000 | Nominee Account at the Bank of Wales in the name of Glen Eden, S.A. |

   j. Transfer From the Nominee Account at CNB in the name of Sunrise:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 45 | OOSTERWYK | November 15, 1995 | $2,500,000 | Gateway CNB Account |

   k. Transfer From the Gateway CNB Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 46 | OOSTERWYK/ MARCIANO | November 15, 1995 | $1,255,500 | Bunnick CNB Account |

   l. Transfers From Elono's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 47 | MARCIANO | August 9, 1996 | $450,000 | Elono's Account at Verwaltungs Bank |
| 48 | MARCIANO | September 13, 1996 | $2,000,000 | Elono's Account at Verwaltungs Bank |

   m. Transfers From Planate's Account at Royce:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|-------|--------------|------|--------|-----------|
| 49 | MARCIANO | August 9, 1996 | $350,000 | Planate's Account at Verwaltungs Bank |
| 50 | MARCIANO | October 28, 1996 | $2,500,000 | Planate's Account at Verwaltungs Bank |

n.    Transfers from Vertical's Account at Bank Safra:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 51 | MARCIANO/ AGAM | March 29, 2001 | $239,985 | BRQ's Account at Fleet Bank in Syosset, New York (the "BRQ Fleet Account") |
| 52 | MARCIANO/ AGAM | October 2, 2001 | $240,000 | BRQ Fleet Account |
| 53 | MARCIANO/ AGAM | June 3, 2002 | $125,000 | BRQ Fleet Account |
| 54 | MARCIANO/ AGAM | June 10, 2002 | $125,985 | BRQ Fleet Account |

o.    Transfers from Horeb's Account at Bank Safra:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 55 | MARCIANO/ AGAM | June 3, 2003 | $250,000 | BRQ Fleet Account |
| 56 | MARCIANO/ AGAM | August 14, 2003 | $500,000 | BRQ Fleet Account |

p.    Transfers from the BRQ Fleet Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 57 | MARCIANO | September 10, 2001 | $16,587 | Account under the control of MARCIANO |
| 58 | MARCIANO | October 2, 2003 | $16,587 | Account under the control of MARCIANO |
| 59 | MARCIANO | September 10, 2003 | $16,587 | Account under the control of MARCIANO |
| 60 | MARCIANO | November 16, 2003 | $16,587 | Account under the control of MARCIANO |
| 61 | MARCIANO | December 15, 2003 | $17,393 | Account under the control of MARCIANO |

q.   Transfer from Magdalane RBC Account:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 62 | MARCIANO/ AGAM/ OOSTERWYK | May 10, 2001 | $2,400,000 | Account under the control of Vertical |

r.   Transfers from St. Catherine's Account at RBC:

| COUNT | DEFENDANT(S) | DATE | AMOUNT | RECIPIENT |
|---|---|---|---|---|
| 63 | MARCIANO/ AGAM/ OOSTERWYK | May 8, 2001 | $960,000 | Magdalane RBC Account |
| 64 | MARCIANO/ AGAM/ OOSTERWYK | May 10, 2001 | $960,000 | Account under the control of Vertical |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
FOR COUNTS THREE THROUGH SIXTY-FOUR

35.   The United States hereby gives notice to the defendants JOHN MARCIANO, ROBERT OOSTERWYK and JACOB AGAM that, upon their conviction of the offenses charged in counts Three through Sixty-Four, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property as a result of defendants' conviction of Counts Three through Sixty-Four of this indictment, including but not limited to, the following:

21

a. a sum of money equal to $16,816,000.00 in United States currency, for which the defendants are jointly and severally liable; and

b. all right title and interest in all funds on deposit in, or transferred to, or through Fleet Bank, account no. 941823195, and held in the name of BRQ Ltd., Inc., and all proceeds traceable thereto.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendants JOHN MARCIANO, ROBERT OOSTERWYK and JACOB AGAM:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the Government, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described sub-paragraph 33(a) through 33(e) above, including but not limited to the following:

    i.    all right, title, and interest in Unit #7D, Tower II, of the Atrium of Palm Beach Condominiums, Palm Beach, Florida, in the name of John A. Marciano and Deborah J. Marciano; and

    ii.   all right, title, and interest in 8 Chestnut Hill Court, Upper Brookville, New York, in the name of John Marciano.

(Title 18, United States Code, Section 982).

A TRUE BILL

FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

23